**E-FILED on** 3/3/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PIARA SINGH GILL,<br><br>    Plaintiff,<br><br>    v.<br><br>EMILIA BARDINI, Director of the San Francisco Asylum Office; SAN FRANCISCO ASYLUM OFFICE, an agency of the United States Citizenship and Immigration Services; LORI SCIALABBA, Director, Refugee, Asylum, and International Operations, an agency of the United States Citizenship and Immigration Services; TIM AITKEN, Acting Field Office Director, Office of Detention and Removal Operations, an agency of the United States Immigration and Customs Enforcement; CITIZENSHIP AND IMMIGRATION SERVICES, an agency of the Department of Homeland Security; FRANCIS D. SICILIANO, Field Office Director, San Francisco Naturalization Unit; and MARK TEMPLE, Officer in Charge of Conducting the Naturalization Examination,<br><br>    Defendants. | No. C-08-05190 RMW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>**[Re Docket No. 15]** |

    Defendants move to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Defendants argue that: (1) plaintiff's challenge to the first termination of his asylum status is moot; (2) plaintiff has failed to exhaust his administrative remedies as to the second termination of his

asylum status; (3) the court lacks jurisdiction to review United States Citizenship and Immigration Service's (USCIS) decision to commence removal proceedings; (4) plaintiff has failed to establish that 8 C.F.R § 208.24 is ultra vires; (5) plaintiff has failed to state a claim entitling him to relief on his naturalization application; and (6) the court cannot grant the relief sought on plaintiff's naturalization application claim. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

### A. Factual History

Piara Singh Gill is a citizen of India who was granted asylum in the United States on May 2, 1996. On May 30, 2000, the Immigration and Naturalization Service (INS) received a letter which appeared to be signed by Gill stating that documents provided in support of his asylum application were "not true" and that Gill had paid someone to "make the documents" for his asylum and green card application. First Am. Compl. ("FAC") Ex. 8. The letter also stated that Gill was returning to India and asked the asylum officer to cancel "our approval for the green card." *Id.* According to Gill, this letter was forged. Opp'n. at 12.

Gill filed a naturalization application on March 12, 2007. FAC Ex. 1. Gill then appeared for examination on November 7, 2007. *Id.* On November 27, 2007, Gill was interviewed again by defendant Mark Temple and signed a statement setting forth what appears to be a paraphrased transcript of the interview. FAC Ex. 7. The statement includes the following series of questions and answers: "Q. Is this asylum application true? A. It was not true, it was written false. Q. And who wrote it? A. I did not write it, someone wrote, the interpreter or someone." *Id.* The statement also includes some discussion of whether Gill disclosed his arrest in India and his aid to a member of the Khalistan Liberation Force, which the interviewer states "makes [Gill] a supporter of terrorism under our law." *Id.* Gill's application for asylum included information that he had been arrested and discussed his indirect contact with the Khalistan Liberation Force. Opp'n. Addendum 3. Gill now contends that he was intimidated during the interview and was coerced into signing the statement. FAC ¶¶ 46-53.

On December 3, 2007, USCIS issued a decision denying Gill's naturalization application, citing Gill's lack of good moral character and fraudulent acquisition of his Lawful Permanent

Resident ("LPR") status. FAC Ex. 1. Gill requested a hearing on the denial of his naturalization application and the USCIS scheduled a hearing for April 15, 2008. FAC Exs. 2, 6. Because Gill was unable to appear on this date due to illness, the USCIS rescheduled the hearing for June 2, 2008. FAC Ex. 6. However, neither Gill nor his attorney appeared at the June 2 hearing, and the USCIS denied his application on June 10, 2008. FAC Ex. 6.

On July 17, 2008, the USCIS issued a Notice of Intent to Terminate Asylum and scheduled a hearing for September 3, 2008. FAC Ex. 9. On August 26, 2008, Gill, through newly acquired counsel, requested a delay in the hearing until October 2008. FAC Ex. 10. The USCIS denied this request for a continuance and held the hearing on September 3, 2008. *Id.* Neither Gill nor Gill's counsel appeared for the hearing. *Id.* On October 8, 2008, the USCIS issued a Notice of Termination of Asylum Status, effective October 7, 2008. FAC Ex. 12. This notice was delivered concurrently with a Notice to Appear at a removal hearing scheduled for January 14, 2009. FAC Ex. 13.

On October 15, 2008, Gill sent the USCIS a letter explaining that correspondence relating to the termination interview had been sent to his prior attorney, impeding his representation at his termination interview, and demanded that the asylum termination be vacated. FAC Ex. 14. After learning that previous correspondence had been sent to Gill's former counsel, the USCIS dismissed without prejudice the Notice to Appear and vacated the termination of Gill's asylum status on March 11, 2009. FAC Ex. 15. The agency then issued a new Notice of an Asylum Termination Interview, scheduling the interview for May 12, 2009. Mot. to Dismiss ("MTD") Ex. 1.

Following Gill's May 12th interview, the USCIS again terminated Gill's asylum status on May 13, 2009. On May 20, 2009, the agency served him with a new Notice to Appear at a removal hearing on August 12, 2009. MTD Exs. 2, 3. No new developments have since been reported to the court in Gill's removal proceedings, and it appears that these proceedings are still ongoing.

**B.     Regulatory Framework**

    **1.     Asylum**

An alien who is physically present in the United States may apply for asylum within one year of entering the United States. 8 U.S.C. §§ 1158(a)(1), (2)(B). The Attorney General or Secretary of

Homeland Security may approve an application for asylum at their discretion if the applicant meets the criteria for a refugee under 8 U.S.C. § 1101(a)(42)(A). *See* 8 U.S.C. § 1158(b)(1)(A). At all times, an asylum applicant bears the burden of proof. 8 U.S.C. § 1158(b)(1)(B).

Asylum may be granted by either an asylum officer or an immigration judge with jurisdiction over the alien's removal case. 8 C.F.R. §§ 208.14(a), (b). Those who receive asylum status are allowed to work while living in the United States. 8 U.S.C. § 1158(d). An asylum applicant can be granted work authorization while an application for asylum is pending before either the asylum officer or the immigration judge. 8 C.F.R. § 274a.12(c)(8). In the event an alien loses or is denied asylum status, that alien is allowed to maintain the authorization to work until he or she has exhausted all administrative and judicial remedies. 8 C.F.R. § 208.7(b).

### 2. Adjustment of Status to Lawful Permanent Resident Status

An alien who is in this country as a lawful non-immigrant may apply to have his or her status adjusted to that of an alien lawfully admitted for permanent residence. The adjustment process is governed by 8 U.S.C. § 1255(a), which, among other things, requires an alien applying for lawful permanent resident ("LPR") status to be "admissible." An alien is "inadmissible" if that alien "by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under [the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq*]." 8 U.S.C. § 1182(a)(6)(C).

Notwithstanding the receipt of LPR status, any alien that qualifies as a "deportable alien" can be removed from the United States upon the order of the Attorney General. 8 U.S.C. § 1227(a). An alien who procures permanent resident status by concealing his or her ineligibility has not been lawfully admitted for permanent residence. *Monet v. INS*, 791 F. 2d 752, 754-55 (9th Cir. 1986). Thus, an alien who gained entry or adjustment through the use of fraud or willful misrepresentations in an asylum application is removable under 8 U.S.C. § 1227(a)(1).

### 3. Termination of Asylum Status and Removal Proceedings

A grant of asylum does not confer on the alien the right to stay in the United States

indefinitely. 8 U.S.C. § 1158(c)(2). Rather, the government may terminate asylum if it determines that the alien no longer qualifies as a refugee. *Id.* In addition, the government may terminate a grant of asylum if the alien engaged in fraud in the application process. 8 C.F.R. § 208.24(a).

When terminating an alien's asylum status, the USCIS must: (1) provide the alien with thirty days' notice; (2) afford the alien the opportunity to present evidence showing that he or she is eligible for asylum; and (3) if the alien is deemed ineligible for asylum, issue a written notice that asylum has been terminated. 8 C.F.R. § 204(c).

After terminating an alien's asylum status, the USCIS begins removal proceedings by issuing a Notice to Appear. At that point, the immigration court acquires jurisdiction over the alien's asylum application. 8 C.F.R. § 1003.14(a). The alien does not relinquish a previously-issued work authorization while he continues to exhaust the administrative appeals process. 8 C.F.R. § 208.7(b). During removal proceedings, an alien is entitled to examine government evidence, call witnesses, cross-examine government witnesses, and receive a full record of the proceedings. 8 U.S.C. § 1229a(b)(4). Additionally, the alien can reassert his entitlement to any immigration benefit the USCIS has terminated and can petition the immigration court for redress. 8 C.F.R. §§ 1003, 208.14(a).

If the immigration court finds an alien removable, the alien may appeal that decision to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 1003.1(b)(3), (9). If the BIA affirms the court's decision, the alien may appeal that decision by filing a petition for review with the appropriate United States Circuit Court. 8 U.S.C. § 1252(b)(9).

### 4. **Naturalization**

Only the Attorney General has the authority to naturalize an alien. 8 U.S.C. § 1421(a). Only aliens who were lawfully admitted to permanent residence and who have held LPR status for at least five years may apply for naturalization. 8 U.S.C. § 1427(a). An applicant must prove he or she possessed good moral character and lived in the United States between the time of application and admission to citizenship. 8 U.S.C. § 1427(a). In determining whether the alien has the requisite good moral character for naturalization, the government is not limited to considering only what

occurred in the five years during which the alien held LPR status prior to applying for naturalization. 8 U.S.C. § 1427(e).

The Attorney General may not consider an application for naturalization from an alien who is in removal proceedings. 8 U.S.C. §1429. Even when the USCIS begins removal proceedings subsequent to the initiation of an action under 8 U.S.C. § 1421(c), neither the courts nor the Attorney General can approve an application for naturalization or order an alien to be naturalized while the alien is in removal proceedings. 8 U.S.C. §1429.

When an alien applies for naturalization, the USCIS conducts an interview of the applicant and makes a determination on the application. 8 U.S.C. §§ 1446(b), (d). If the USCIS denies the request for naturalization, the alien may appeal that decision to an immigration officer. 8 U.S.C. § 1447(a). If the immigration officer affirms the denial, the alien may either seek review of the denial in a district court or seek a de novo hearing de novo on the application in the appropriate district court. 8 U.S.C. §1421(c). If the district court determines that the government erred in denying the naturalization application, it cannot simply naturalize the alien. Rather, the court must approve the naturalization application and issue a writ of mandamus ordering the Attorney General to naturalize the alien. 8 U.S.C. §1421(a).

## II. ANALYSIS

### A. Mootness of First Termination of Asylum Status

Defendant argues that plaintiff's claims relating to the first termination proceedings are moot. The court agrees.

According to plaintiff, an error in mailing paperwork to his attorney culminated in plaintiff failing to appear at his termination hearing in 2008. FAC ¶¶ 66, 71. However, plaintiff acknowledges that, following this initial ministerial error, the original termination of his asylum status was vacated, and new termination-of-status proceedings were initiated. FAC Ex. 15. A case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Murphy v. Hunt*, 455 U.S. 478, 841 (1984). Though it appears that the issues presented by the first termination of plaintiff's asylum status are no longer "live," plaintiff nonetheless contends that his challenge to the first termination of his asylum status is not moot.

There are certain exceptions to the general rule for finding a case moot. For example, if adjudicating the case would have an effect on communication or negotiations between parties in the future, these "collateral consequences" may make a case justiciable. *See Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 124-25 (1974) ("even though the case for an injunction dissolved with the subsequent settlement of the strike and the strikers' return to work, the parties to the principal controversy . . . may still retain sufficient interests and injury as to justify the award of declaratory relief"). There is also an exception where the issue before the court is one that is capable of repetition, yet evades review. *Id.* at 125-26 ("If we were to condition our review on the existence of an economic strike, this case most certainly would be of the type presenting an issue 'capable of repetition, yet evading review.' To require the presence of an active and live labor dispute would tax the litigant too much by arbitrarily slighting claims of adverse injury from concrete governmental action (or the immediate threat thereof).") (internal citations omitted). A third exception to mootness exists where defendants voluntarily cease a practice, but may repeat that practice in the future. *Northeastern Florida Chapter of the Assoc. Gen. Contractors of America v. City of Jacksonville*, 508 U.S. 656, 662 (1993).

None of these exceptions applies here. Gill's cause of action arises from a one-time failure to correctly address a letter to plaintiff's counsel at the time. There is no reason to believe this mistake is part of an underlying practice or policy that affects how defendants communicate with Gill. Although such a ministerial error is capable of repetition, it does not result from an administrative policy or governmental action of the type described in either *Super Tire Engineering* or *General Contractors of America*. When defendants discovered that correspondence had been incorrectly addressed, they responded by vacating the termination of Gill's asylum status and all related proceedings and properly delivering to Gill and his representation papers initiating new termination-of-status proceedings. This practice does not give rise to the concerns pleaded in the FAC. For these reasons, the court dismisses plaintiff's claims relating to the first termination-of-status proceedings.

### B. Failure to Exhaust Administrative Remedies

Defendants argue that Gill's claims relating to the termination of his asylum status cannot be reviewed by this court because Gill has not exhausted his administrative remedies. The exhaustion doctrine provides that one is not entitled to judicial relief for a supposed or threatened injury until the challenge to the administrative decision has been exhausted. *McKart v. United States*, 395 U.S. 185, 193 (1969). The finality of an administrative order is determined based on: (1) whether the order amounts to a definitive statement of the agency's position, (2) whether the order has a direct and immediate effect on the day-to-day operations of the party seeking review, and (3) whether immediate compliance is expected. *California Dep't of Water Res. v. FERC*, 341 F.3d 906, 909 (9th Cir. 2003).

The USCIS's termination of Gill's asylum status does not amount to a definitive statement of the agency's position. Gill can reassert entitlement to asylum status within removal proceedings. 8 C.F.R. § 1003; *see also* 8 C.F.R. § 208.14(a). Gill may also appeal adverse decisions, either from the removal proceedings or from the termination of asylum status proceedings, to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 1003.1(b)(3), (9). Gill may then appeal the BIA's decision by filing a petition for review with the appropriate United States Circuit Court. 8 U.S.C. § 1252(b)(9). None of these regulations or statutes suggest the distinction between a revoked asylum status and an initial denial of asylum status as claimed by plaintiff. In addition, Gill is not affected in his day-to-day life because he can still retain work authorization during the review process, and no "compliance" with the termination of asylum status is expected. Gill may continue to live in the United States throughout the administrative hearings and appeals process. Therefore, the court finds that the termination of Gill's asylum status is not a final decision, and plaintiff must exhaust his administrative remedies before a court can review the administrative decision.

Because plaintiff's failure to exhaust administrative remedies precludes the court from reviewing his claims, the court need not reach the remainder of defendants' arguments for dismissing his claims.

**III. ORDER**

For the foregoing reasons, the court grants defendants' motion to dismiss on all claims.

DATED: 3/3/10

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Jaime Jasso				appealworks@yahoo.com

**Counsel for Defendants:**

Ila Casy Deiss				ila.deiss@usdoj.gov
J. Max Weintraub			jacob.weintraub@usdoj.gov
Melanie Lea Proctor			Melanie.Proctor@usdoj.gov
Jonathan Del Wasden			jonathan.d.wasden@usdoj.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 3/3/10						CCL
							**Chambers of Judge Whyte**